UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DAVID B. LEONARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-CV-0030-ERW |
| ) | |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of David B. Leonard ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (ECF 7), and Defendant filed a brief in support of the Answer (ECF 12).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB under Title II of the Social Security Act on May 7, 2015 (Tr. 152-153). Plaintiff was initially denied relief on July 20, 2015, and on August 19, 2015, he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 84-92). After a hearing, by a decision dated April 14, 2017, the ALJ found Plaintiff was not disabled (Tr. 10-20). Plaintiff filed a *Request for Review of Hearing Decision* on June 15, 2017 (Tr. 151). On March 6, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-3). Plaintiff appealed to the United States District Court for the Eastern District of Missouri on May 3, 2018 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and Plaintiff has not engaged in substantial gainful activity since January 7, 2015, the alleged onset date of his disability (Tr. 12).

The ALJ determined Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine with radiculopathy[1], obesity, depression, adjustment disorder[2], and anxiety (Tr. 12). The ALJ also found Plaintiff has the medically determinable impairments of diabetes mellitus, hypertension, and mild bilateral carpal tunnel syndrome, but the impairments either do not cause more than a minimal limitation on Plaintiff's ability to perform work activities, or do not satisfy the durational requirements for the purposes of disability, and are therefore non-severe (Tr. 12). The ALJ found no impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).

The ALJ conducted a hearing with Plaintiff, Plaintiff's attorney, and a vocational expert, Barbara Myers, on January 25, 2017 (Tr. 33). Plaintiff was 42 years old at the time of hearing, and testified he became disabled on January 7, 2015 (Tr. 35). Plaintiff completed twelfth grade (Tr. 35). He was employed at Northeast Correctional Center, and had to resign as a result of his back pain (Tr. 37). Plaintiff testified he is 5'10" and weighs 315 pounds (Tr. 36). He also testified he has "put on probably 30 pounds" since January 2015, because he is unable to exercise (Tr. 36).

---

[1] Degenerative Disc Disease occurs when the cartilage between the discs and joints in the spine deteriorate and cause pain. Radiculopathy refers to nerve irritation caused by damage to the disc between the vertebrae in the back and neck.

[2] Adjustment disorder is a stress-related condition which causes a person to experience more stress than would normally be expected in response to a stressful or unexpected event. This stress then causes significant problems on a person's relationships.

Plaintiff has neck pain two to three times a day for approximately an hour to two, which originated prior to his back surgery in 2015(Tr. 38). As a result of his neck pain, Plaintiff testified he has a tight squeezing sensation as well as numbness and tingling in both of his arms approximately two to three times a day, for approximately 15 or 20 minutes (Tr. 38-39). When Plaintiff experiences numbness in his hands, he cannot grip things, use a keyboard, and can occasionally drop cups (Tr. 40). Plaintiff has gotten three sets of steroid injections in his neck, with the last one occurring three years ago (Tr. 41).

Plaintiff has non-insulin dependent diabetes (Tr. 42). He takes metformin for the diabetes, which causes him to have diarrhea once a week (Tr. 42). This diarrhea causes him to take three trips to the restroom, with each trip taking about five to ten minutes (Tr. 42). Plaintiff experiences drops in blood sugar about once every two weeks, which causes shakiness and requires him to take a glucose tablet (Tr. 49). Plaintiff's shakiness occurs for approximately three to five minutes, and requires a five to ten minutes of recovery time after the shakiness subsides (Tr. 50).

Plaintiff had back surgery on January 8, 2015, which resulted in him feeling better for about a month and a half, only to relapse into worse pain after the first month and a half (Tr. 42-43). Plaintiff experiences lower back pain about four inches above his belt line, which occurs about two the three times a day, for about two to three hours at a time (Tr. 43-44). This pain radiates into Plaintiff's legs causing a tight squeezing, and then a sharp sensation (Tr. 44) The pain is worse in Plaintiff's left leg (Tr. 44).

For his lower back pain, Plaintiff testified he uses a heating pad about four times a day for about fifteen minutes (Tr. 45-46). He experiences swelling in his right ankle about twice a week which requires elevation (Tr. 47). Plaintiff has walked with a cane since January 2015, to

reduce the risk of falling (Tr. 48). Even with the cane, he falls approximately twice a month and stumbles but does not fall approximately two to three times a week (Tr. 48).

Plaintiff sleeps with a CPAP[3] machine (Tr. 49). Plaintiff also testified he had gastric bypass surgery in August 2013 (Tr. 50). After losing 100 pounds following the surgery, Plaintiff testified he has gained back 30 pounds since January 2015, as a result of his inability to exercise (Tr. 36, 50). Plaintiff takes one nap a day for approximately an hour and a half, and lays down usually twice a day for a half hour at a time to relieve pain (Tr. 51).

Plaintiff testified he sees a psychiatric nurse practitioner for depression, mood swings, and post-traumatic stress disorder ("PTSD") (Tr. 52). The PTSD occurred after Plaintiff served as a prison guard, and causes him to have dreams where he is getting assaulted and stabbed (Tr. 52). Plaintiff has difficulty driving a car and can only drive about ten miles because of the numbness in his leg (Tr. 53-54). Plaintiff also has difficulties riding in a car because of his back and leg pain (Tr. 54). His back pain wakes him up approximately three times a night (Tr. 54).

In a typical day, from 9:00 a.m. to 5:00 p.m., Plaintiff reclines or lies down approximately three hours a day, including naps (Tr. 55-56). He is able to sit comfortably for about thirty minutes at a time, totaling approximately two hours a day (Tr. 56). With his cane, Plaintiff is able to walk about 100 yards before resting, and only about 50 yards without his cane (Tr. 56). He is able to list about 10 pounds without pain in his lower back (Tr. 56-57).

The vocational expert, Barbara Myers, testified Plaintiff's past work includes work as a corrections officer – a medium exertional level, semi-skilled position (Tr. 65). Ms. Myers testified Plaintiff is not able to perform any of his past work; however, he was able to do light,

---

[3] CPAP stands for continuous positive airway pressure, and is a machine which treats obstructive sleep apnea by delivering constant and steady air pressure to a sleeping person.

4

unskilled work including as a collator operator, an addressing clerk, and a document preparer (Tr. 65-66).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform sedentary work (Tr. 14). Plaintiff can frequently reach overhead and in all other directions bilaterally; he can frequently bilaterally handle and finger; he can occasionally balance, stop, knee, crouch, and crawl; he should never be expose to unprotected heights, moving mechanical parts, or vibration; he should not operate a motor vehicle as part of his job duties; he may have occasional exposure to extreme cold or heat; he is limited to simple routine tasks and making simple work-related decisions; and, he can have occasional interaction with supervisors, coworkers, and the public (Tr. 14).

The ALJ found Plaintiff is unable to perform any past relevant work[4] (Tr. 19). The ALJ also found there are jobs, which exist in significant numbers in the national economy, Plaintiff can perform, including as an addressing clerk, and a document preparer (Tr. 20). Thus, the ALJ's conclusion for Plaintiff was "not disabled" (Tr. 20).

Plaintiff appeals, argues first, the ALJ failed to afford adequate weight to the opinion of Plaintiff's treating physician, Dr. Lent Johnson, and the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first

---
[4] Plaintiff's past relevant work includes work as a corrections officer.

the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past to determine if the claimant can perform any past relevant work. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national

economy which can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed, if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision, which is supported by substantial evidence, is not subject to reversal, merely because substantial evidence may also support an opposite conclusion, or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

**IV. DISCUSSION**

In his appeal of the ALJ's decision, Plaintiff argues, first, the ALJ failed to afford adequate weight to the opinion of Plaintiff's treating physician, Dr. Lent Johnson, and second, the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

**A. Dr. Johnson's Medical Source Statement**

Medical opinions are given weight according to the guidelines outlined in the Title 20 of the Code of Federal Regulations for claims filed before March 27, 2017. *See* 20 C.F.R § 404.1527. More weight is given to medical opinions from treating sources. *Id.* If a "treating source's medical opinion on the issue(s) of the nature and severity of [an] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [Plaintiffs] case record, we will give it controlling weight." 20 C.F.R. § 404.1527. "A treating physician's opinion, however, 'does not

8

automatically control or obviate the need to evaluate the record as a whole.'" *Nowling v. Colvin*, 813 F.3d 1110, 1122–23 (8th Cir. 2016) *quoting Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2001). An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) *citing Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

"If a treating physician's opinion is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate." *McRoberts v. Berryhill*, No. 4:17 CV 1447, 2018 WL 2335746, at *9 (E.D. Mo. May 23, 2018) *citing Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). If the opinion is not given controlling weight, factors which must be considered include length of treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization and other factors brought to the attention of the ALJ are considered. 20 C.F.R. § 404.1527 (c). The ALJ is required to "give good reasons" for the weight given to a treating sources medical opinion. 20 C.F.R. § 404.1527(c)(2).

In his opinion, the ALJ gave *limited* weight to the pre-printed check box medical source statement of Dr. Lent Johnson (Tr. 17). The ALJ stated Dr. Johnson's opinion was only afforded *limited* weight because, while some of the limitations Dr. Johnson indicated on his March 31, 2016 medical source statement were consistent with the totality of the evidence, other limitations were not consistent, or supported by Plaintiff's treatment record. The ALJ also indicated some of Dr. Johnson's noted limitations for Plaintiff were in contrast to Dr. Johnson's other treatment notes.

The ALJ noted in his opinion Dr. Johnson's medical source statement and opinion was based on a "treatment relationship" with Plaintiff, acknowledging Dr. Johnson was a treating

9

physician (Tr. 17). The ALJ then acknowledged Dr. Johnson's limitations with regards to Plaintiff's ability to lift and carry ten pounds, as well as limitations involving Plaintiff's ability to climb, reach, handle, finger, and stoop, were consistent with the totality of the medical evidence (Tr. 17). The ALJ found, however, Dr. Johnson's limitations involving Plaintiff's ability to sit, stand, walk, crouch, and his need to be absent from work, were inconsistent with the medical record as a whole, and thus, were afforded *limited* weight.

Plaintiff argues the ALJ erred by affording Dr. Johnson's March 2016 medical source statement *limited* weight, without appropriately considering the factors which must be evaluated when a treating physician's opinion is not given controlling weight. *See* 20 C.F.R. § 404.1527 (c). The ALJ is required to "give good reasons" for the weight given to a treating sources medical opinion. 20 C.F.R. § 404.1527(c)(2). In the present case, the ALJ did give good reasons for choosing to discount Dr. Johnson's opinions, namely, they conflict with the other medical evidence in the record, including evidence from Dr. Johnson himself. "[W]here the treating physician's opinions are themselves inconsistent, they should be accorded less deference." *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996).

In his opinion, the ALJ specifically details Plaintiff's physical impairments, stating,

> [Plaintiff] has been diagnosed with physical impairments that limit his ability to perform certain work-related functions. [Plaintiff] complained of neck and back pain with arm and leg pain and numbness. Physical examinations showed mild cervical and lumbar tenderness, decreased and painful cervical and lumbar range of motion, and neck stiffness. Diagnostic imaging studies of the claimant's cervical spine revealed degenerative changes… [Plaintiff] was diagnosed with degenerative disc disease in the cervical and lumbar spine.
>
> On January 8, 2015, [Plaintiff] underwent fusion and decompression surgery at L4- L5. Following the surgery, [Plaintiff] continued to complain of back pain with radiation into his legs. He also reported episodes of falling and lower extremity numbness, worse on the left. Examinations showed leg weakness, lumbar tenderness, limited hip range of motion, mild weakness in the left upper and lower extremities, decreased sensation on the left side, and ataxic or antalgic gait.

10

> [Plaintiff] was diagnosed with lumbar radiculopathy and degenerative disc disease. On September 28, 2016, a trial spinal cord stimulator was placed. A permanent spinal cord stimulator was implanted February 6, 2017.
>
> [Plaintiff] is also obese. He testified that he is 5' 10" and weighs 315 pounds. At that height and weight, [Plaintiff] has a body mass index of 45.2, placing him in the obese category.
> In accordance with SSR 02-lp, I have considered the effects of [Plaintiff's] obesity on his other impairments when setting forth the above residual functional capacity. I find [Plaintiff's] physical impairments would limit him to sedentary work and result in restrictions on his ability to climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, drive, and tolerate temperature extremes, as well as on his exposure to workplace hazards (Tr. 16-17, internal citations omitted).

The ALJ also noted Plaintiff stated in June 2014 he was able to walk one to three miles every day (Tr. 291). In January 2017, Plaintiff stated he was able to use an exercise bike (Tr. 509). The ALJ then concludes Plaintiff's "subjective complaints are out of proportion to the objective medical evidence" (Tr. 16). To support this conclusion, the ALJ states,

> Many examinations, both before and after [Plaintiff's] back surgery, showed normal range of motion, sensation, reflexes, strength, muscle tone, gait, and stance. Straight leg raising tests were negative. Diagnostic imaging studies conducted after [Plaintiff's] surgery showed a well-decompressed central canal and nerve roots with no evidence of neural compromise to only mild stenosis. One of [Plaintiff's] examining doctors concluded [Plaintiff] has mechanical low back pain in the presence of morbid obesity. [Plaintiff] reported 50-60% pain relief and less use of pain medication with the spinal cord stimulator.
>
> Many mental status examinations showed intact memory, normal attention span and concentration, linear and goal-directed thought processes, and normal insight and judgment. [Plaintiff] reported his energy and motivation are fair and that his concentration is adequate. He also reported a decrease in flashbacks. [Plaintiff] underwent a psychological evaluation prior to placement of a spinal cord stimulator was found to have no significant psychopathology that would preclude surgery. The examiner noted that the claimant's depression was generally well-managed with medication (Tr. 16, internal citations omitted)

In his opinion, the ALJ then acknowledges Plaintiff "has conditions, which singly or in combination, may cause him pain or other difficulty," but Plaintiff's "symptoms are not

11

consistent with his physical and mental examination results, diagnostic imaging studies, and response to treatment" (Tr. 16).

Throughout his opinion, the ALJ stated in detail which of Dr. Johnson's stated limitations were inconsistent with Plaintiff's medical record, including, Plaintiff's ability to sit, stand, walk, crouch, and his need to be absent from work (Tr. 17). Dr. Johnson's opinion was only allocated *limited* weight to the extent his stated limitations were inconsistent with Plaintiff's medical records, and Plaintiff's own stated abilities. Accordingly, using the complete medical record, and Plaintiff's testimony, the ALJ gave "good reasons" in his opinion for affording *limited* weight to select components of Dr. Johnson's medical opinion when they were inconsistent with Plaintiff's treatment records, and Dr. Johnson's own treatment notes.

### B. Plaintiff's RFC

Plaintiff contends the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because two of Plaintiff's medical providers, Dr. Johnson and Carol Greening, both stated Plaintiff required additional limitations which were not ultimately reflected in Plaintiff's RFC.

In Plaintiff's brief, he contends the record supports a different RFC determination than the ALJ, however, a "decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

Carol Greening, A.P.R.N., completed a medical source statement, similar to Dr. Johnson's, on December 29, 2016, regarding Plaintiff's mental health (Tr. 480-482). Ms. Greening's opinion included moderate limitations on Plaintiff's ability to understand, remember,

and carry out simple instructions, and his ability to make judgments on simple work-related decisions, as well as marked limitations on his ability to understand, remember, and carry out complex instructions, and his ability to make judgments on complex work-related decisions (Tr. 18, 480-482). Ms. Greening also stated Plaintiff has moderate limitations on his ability to appropriately interact with the public, marked limitations on his ability to interact with coworkers, and extreme limitations on his ability to interact appropriately with supervisors, and response to work situations and changes in routine settings (Tr. 18, 480-482). The ALJ gave *little* weight to Ms. Greening's opinion (Tr. 18).

The ALJ correctly noted Ms. Greening, a nurse practitioner, is not an acceptable medical source under 20 C.F.R. § 404.1513. Even though she is not an acceptable medical source, the ALJ still considered her medical sources statement with "resect to severity and effect on function" (Tr. 18). The ALJ concluded Ms. Greening's report was inconsistent and unsupported by her own treatment notes (Tr. 18). Accordingly, substantial evidence supports the ALJ's allocation of *little* weight for Ms. Greening's medical sources statement because she is not an acceptable medical source, and the ALJ appropriately considered her report in the context of the larger medical records.

For the reasons stated prior, the ALJ's determination to afford *limited* weight to Dr. Johnson's opinion is supported by substantial evidence because he gave good reasons for his determinations.

Plaintiff argues the ALJ improperly discounted the medical sources statements of Dr. Johnson and Ms. Greening, both of which indicated Plaintiff requires additional limitations with regards to breaks and time off work, which were not accounted for in Plaintiff's RFC. The ALJ appropriately considered and explained the medical record evidence from Dr. Johnson, as well as

13

from Plaintiff's nurse practitioner, Carol Greening, to determine Plaintiff's RFC. Accordingly, the Court finds the ALJ's RFC determination, including limitations on Plaintiff's ability to perform certain types of work, based on medical opinions, and the testimony of Plaintiff, is supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds substantial evidence on the record, as a whole, supports the Commissioner's decision Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 8th day of May, 2019.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**